JOSLYN et al.....

(Circuit Court..... DOWNING, HOPKINS & CO. et al.

..... of Appeals, Ninth Circuit. October 8, 1906.)

1. GAMING—GAM..... No. 1,290.
 Evidence
 shop, and BLING TRANSACTIONS—BETS ON RISE OR FALL OF PRICES.
 ly gam..... held to support a finding that a defendant conducted a bucket
 that its pretended buying and selling for a customer were mere-
2. TRUSTS—.....ling transactions.
 ....ling transactions.
 buc.....USE OF TRUST FUNDS—RECOVERY BY CESTUI QUE TRUST.
 fen.....ere a customer in his dealings with defendant, which conducted a
 se..t shop, used funds which he held in trust, and lost the same to de-
 f..ant, such dealings being merely gambling transactions between them-
 t.es, without any actual buying or selling of stocks or commodities, de-
 .....dant, having obtained such funds without giving any lawful considera-
 .....on therefor, may be required in equity to restore the same to the right-
 ful owners.

cAppeal from the Circuit Court of the United States for the North-
·n Division of the Western District of Washington.

The appellees were the complainants in a bill in equity which they brought
.o recover from the appellant money which had been held in trust for them
)y Howard Joslyn, their son, but which it was alleged had been lost to the
appellant by Howard Joslyn in a course of speculation on the rise and fall
of the market prices of stock, grain, and produce during the months of March
and April, 1900. The money was the proceeds of the sale of certain lots in
Seattle which had belonged to appellees, and which had been sold by Howard
Joslyn under a power to sell and remit the proceeds. The amount received
was $10,800, all of which, excepting $200 paid as commission to a broker,
Howard Joslyn embezzled. Howard Joslyn had no money of his own. He
opened his account with the appellant by depositing money with it, not in his
own name, but in that of N. S. Joslyn, and he testified that, when he did so,
he explained to the appellant's manager that he wished to carry the deposit
in that name because of his personal embarrassment, and because he did not
wish to have the money subject to attachment by his creditors. The trial
court found for the appellees on all material averments of their bill, found

that the transactions between Howard Joslyn and the appellant were simply bets upon the fluctuations of the market, and that the appellees were entitled to recover under the pleadings the aggregate amount of their money received by the appellant during the months of March and April, 1900, amounting in all to $7,708. A decree was rendered in favor of appellees for that sum, with legal interest thereon from May 1, 1900.

Thomas R. Shepard and Shepard & Bailey, for appellant.

Wm. Martin, George H. Bailey, and Franklin K. Lane, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case, delivered the opinion of the court.

The appellant's contentions, in the order in which we shall consider them, are, first, that the transactions which it had with Howard Joslyn were legitimate business contracts. The appellant is a corporation organized under the laws of Washington, and having its principal place of business at Seattle. Its co-defendant in the suit is an incorporation of the same company under the same name, organized under the laws of Oregon, having its principal place of business at Portland. The appellant had branch offices also at Walla Walla and Spokane, in Washington, and at Salem, Or. In all of the nearly daily transactions which Howard Joslyn had with the appellant there never was one actual delivery of stock or commodity. In some of were had with Joslyn figured as purchaser, in others as seller, and all go Board of reference to what purported to be the prices of the Chicago by Trade—prices represented to have been received by the commodities daily telegraphic reports. The real price of the stocks or $60,000. so dealt in would in a single day amount to from $50,000 to itself The appellant, through its manager, admitted that the appellant carried on all these transactions with Howard Joslyn, and ders him commissions thereon aggregating $7,722.50, that the only own which it placed anywhere were hedging orders placed with its branch offices, and that the appellant had no stocks or commodities deliver, and was not in the market buying the same from the owner thereof. It is true that the manager pretended to say that the appellant had the opportunity to buy, and would have done so, if deliver, had been insisted upon, but he was unable to mention a single instance of such sale and delivery, either to Howard Joslyn or to any one, at any time before the commencement of the present suit. It is too evident to require discussion that no such delivery was ever contemplated in the course of the appellant's business. The testimony convinced the trial court, as it does us, that the transactions were gambling deals or bets on the market price of stocks and commodities, and that the appellant was conducting what is commonly known as a "bucket shop." This view of the nature of the business which it carried on is sustained by its own admission in a case proper here to be adverted to (Cullison v. Downing [Or.] 71 Pac. 70), in which it made a successful defense to an action brought against it on a contract for commissions by one of its employés on the ground that the business it was engaged in was

unlawful, and that its contracts were gambling contracts. In that case the following is found in the opinion of the court:

"A careful examination of the testimony introduced by the plaintiff shows that defendants falsely represented to their customers that all orders received for the purchase of grain were transmitted by telegraph to the Chicago Board of Trade, and, after the commodity had been thus secured, orders for the sale thereof were sent in the same manner, for which the defendants charged a commission of one-eighth or one-fourth of a cent a bushel; that but few of such orders were ever sent, the defendants "crossing" in their office orders for the purchase of wheat with orders for the sale thereof, whereby they secured two commissions without performing any service therefor. * * * The methods pursued by them were fictitious."

It is contended that the appellant was not aware that the money which it took from Howard Joslyn was a trust fund, and that since he, even if the transactions were illegal, could not recover the money, the appellees stand in no better attitude. The appellant had notice at the beginning of its dealings with Howard Joslyn that he was embarrassed financially. His account was opened in a name other than his own. He did not tell the appellant who N. S. Joslyn was, but he informed its manager that he wished to carry his deposits in that name on account of his personal embarrassment and to avoid attachment by creditors. The appellant thus had knowledge of facts sufficient, we think, to put it upon inquiry to ascertain who N. S. Joslyn was, and whose the money was that was being so used. But it is unimportant whether knowledge of those facts was or was not sufficient to put the appellant upon inquiry, for the right of the owners in this instance to recover the money does not depend upon notice to the appellant that the money was held in trust. The appellees did not participate in the gambling transactions. They had no knowledge that their money was being thus used. Howard Joslyn had possession of their money in trust only for the purpose of transmitting it to them. The appellant in receiving the money parted with nothing of value. It was not a holder for value. It received the money without lawful consideration, and it has no legal or equitable ground for refusing to restore it to the true owner, with interest thereon from the dates on which it was received. No objection has been interposed to the nature of the remedy by which it is sought to recover the money in this equitable suit. Central Stock & Grain Exchange v. Bendinger, 109 Fed. 926, 48 C. C. A. 726, 56 L. R. A. 875.

The further contention is made that the appellees cannot recover for the reason that they have failed to distinguish their money paid to the appellant by Howard Joslyn from the money paid by him which belonged to him. Howard Joslyn testified that all the money which he received from the sale of appellee's property was paid by him to the appellant. The trial court found the dates and amounts of specific payments of money made during March and April, amounting to the total sum of $7,708. Its finding is amply sustained by the record, an examination of which leaves no doubt that those sums were paid by Howard Joslyn to the appellant out of the proceeds of the sale of appellees' property. We are convinced, moreover, that that sum does not represent the full amount which the appellant should, in equity, be

required to account for, and that at least $1,500 in addition thereto is justly due to the appellees from the appellant.

But, in view of the issues framed in the pleadings upon which the case went to trial, and the absence of a cross-appeal, we think that we are without power to extend further relief to the appellees than to affirm the decree of the court below, which we do.