In re DORR.

ALLEN v. FORBIS.

(Circuit Court of Appeals, Ninth Circuit. April 3, 1911.)

No. 1,873.

1. GAMING (§ 11*)—FUTURES—VALID TRANSACTIONS.

Rev. Codes Mont. § 8416, prohibiting places where stocks, etc., are sold on margins, relates only to such transactions on margins as are recognized as gambling transactions, and does not invalidate an agreement for a purchase from a member of a stock exchange of particular stock, one-fourth of the price being paid, and the stock being held as security for the balance where actual delivery is expressly contemplated.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. § 23; Dec. Dig. § 11.*]

2. GAMING (§ 3*)—PENAL STATUTES—CONSTRUCTION.

Rev. Codes Mont. § 8416, prohibiting places where stocks, etc., are sold on margins, being penal, must be strictly construed.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. § 3; Dec. Dig. § 3.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** **BANKRUPTCY (§ 314\*) — CLAIMS — ILLEGAL TRANSACTIONS — FUTURES—EXE-CUTED CONTRACTS.**

Even if a contract to purchase stock was originally invalid as a gambling transaction on margins in violation of Rev. Codes Mont. § 8416, the illegality cannot be asserted by the broker's trustee in bankruptcy against a claim by the purchaser where the contract was executed by the broker purchasing the stock, and where he disposed of it without the claimant's knowledge and consent, and misappropriated the proceeds.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 314.\*]

Petition to Revise an Order of the District Court of the United States for the Southern District of California.

In the matter of Fred Dorr, bankrupt. On petition by Carroll Allen, trustee, to review an order of the referee denying the trustee's petition to reconsider a claim of John J. Forbis. Petition denied.

A petition is presented for the revision of an order of the District Court affirming the order of the referee in bankruptcy denying the petition of the trustee to reconsider the claim of the respondent which had theretofore been allowed. The respondent had filed his claim for $7,312.89 against the bankrupt's estate, and the claim had been allowed. The trustee filed a petition for the reconsideration and rejection thereof ' on the ground, and the sole ground, that the claim was based on a gambling transaction in stock prohibited by the law of Montana. The facts as stipulated are as follows: The respondent was a resident of Butte, Mont., in June and July, 1908, and at the same time the bankrupt was a stockbroker at the same place conducting a brokerage business where grain stocks and other securities were sold on margin and otherwise. On June 30th the respondent purchased from the bankrupt certain shares of stock of the United Steel Corporation, the total purchase price of which, with the commission, was $15,162.50. The respondent paid on account thereof $3,864.35, leaving a balance due the bankrupt of $11,258.15, for which the latter held the stock as security. The bankrupt was a member of the New York Stock Exchange, where the orders of the respondent were executed. On August 12, 1908, the value of the stock so purchased was $18,750, and before said date the bankrupt had without the knowledge or consent of the respondent disposed of the stock, and at the time when the petition for bankruptcy was filed he had in his possession none of the stock, nor any stock of the same kind, nor any money with which to purchase such stock. Said purchase and sale was made subject to the following agreement: "All orders for the purchase and sale of any article received and executed with the distinct understanding that actual delivery is contemplated, and the party giving the orders so understands and agrees. It is further understood that, on all credit business, the right is reserved to close transactions when credits are running out—or so nearly in our judgment, as to endanger the account—without further notice, and settle contracts in accordance with rules and customs of Exchange when order is executed." For violation of the rules the bankrupt was suspended from membership in the New York Stock Exchange on July 29, 1908. The petition in bankruptcy against the bankrupt was filed on August 12, 1908, and at that time the value of the said stock was $18,750.

Section 8416 of the Revised Codes of Montana provides: "Gambling Games Prohibited.—Any person who carries on, opens up or causes to be opened, or who conducts or causes to be conducted, or operates, or runs, as principal. agent or employé, any game of monte, dondo, fan-tan, tan, stud-horse poker, craps, seven and a half, twenty-one, faro, roulette, draw-poker, or the game commonly called round-the-table poker, or solo, or any banking or percentage game, or any game commonly known as a sure-thing game, or any game of chance played with cards, dice or any device whatever, or who runs or conducts or keeps any slot machine, or other similar machine, or permits the same to be run or conducted, for money, checks, credits, or any representative of value, or for any property or thing whatever, or any

---

person or persons who conduct any brokerage business, bucket shop or office where grain stocks or securities of any kind are sold on margins and any person owning or in charge of any saloon, beer hall, barroom, cigar store or other place of business, or any place where drinks are sold or served, who permits any of the games mentioned in this section to be played in or about such saloon, beer hall, barroom, cigar store, or other place of business, or permits any slot machine, or other similar machine to be kept therein, is punishable by a fine of not less than one hundred nor more than one thousand dollars, and may be imprisoned for not less than three months, nor more than one year, or by both such fine and imprisonment."

Hickcox & Crenshaw, for petitioner.

W. T. Craig, for respondent.

Before GILBERT and ROSS, Circuit Judges, and HANFORD, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] The referee allowed the claim of the respondent and thereafter denied the petition of the trustee to reconsider the same, holding that the provision of the statute of Montana (section 8416) subjecting to a penalty "any person conducting any brokerage business, bucket shop or office where grain stocks or securities of any kind are sold on margins" did not render the respondent's claim illegal as based upon a contract prohibited by law, and so held upon the consideration that the purpose and aim of the statute in which that provision is found was to inhibit gambling games, and that the transaction in question was not a gambling transaction, but was a legitimate contract for the future delivery of merchandise, and that there was no evidence to show that, instead of the delivery of the article purchased, there was to be a mere payment of the difference between the contract and the market price. We are inclined to the opinion that the referee was right in so construing the statute.

[2] The statute was directed against gambling and gambling games, and, being a penal statute, it is to be strictly construed. A transaction such as is disclosed in this record was not a gambling transaction, but was a contract such as receives the recognition and protection of the courts. In Clews v. Jamieson, 182 U. S. 461, 489, 21 Sup. Ct. 845, 45 L. Ed. 1183, Mr. Justice Peckham said that a sale for future delivery is not on its face void, but is a perfectly legal and valid contract, and that the fact that at the time of making the contract for future delivery the party binding himself to sell has not the goods in his possession, and has no means of obtaining them for delivery otherwise than by purchasing, does not invalidate the contract. Such a transaction is to be distinguished from that which met the condemnation of this court in Joslyn v. Downing, Hopkins & Co., 150 Fed. 317, 80 C. C. A. 205, in which there was no actual buying or selling of stocks or commodities, but the transactions were gambling deals or bets on the market price thereof. We think it should be held, therefore, that the clause in the statute, the title of which is "Gambling Games Prohibited," and which denounces a penalty against any person who conducts a bucket shop or office where grain stocks or securities of any kind are sold on margins, refers only to such transactions on margins as are recognized as gambling transactions.

[3] But there is other ground on which the petition for revision should be denied. If it were conceded that the original transaction between the respondent and the bankrupt was forbidden by the statute of Montana, and was therefore unlawful on the ground that every contract which contravenes any legal principle or enactment is declared void, still the illegality of the contract cannot be set up to defeat the claim of the respondent, for the reason that the contract had been executed. It is not denied that the bankrupt had in his possession at or before the adjudication of bankruptcy money which belonged to the respondent, money realized from an unauthorized sale of respondent's property. To defeat the claim, the trustee relies on the illegality of the contract whereby the property was acquired. But the allowance of the claim does not involve the enforcement of the contract which was made in the broker's office in Butte. The contract, so far as it could be affected by the statute of Montana, had been completed, and, when the bankrupt disposed of the respondent's property, a new obligation was created, an obligation to turn over to the respondent property which belonged to him, and in which the bankrupt had no interest. If money has been actually paid to an agent or a partner, the illegality of the transaction by which it was acquired does not affect the right of the principal or the other partner to recover. In McBlair v. Gibbes, 17 How. 232, 15 L. Ed. 132, it was held that, where an illegal contract has been completed and money has been received by a joint owner as the fruit of the illegal contract, he will not be permitted to retain it, and he cannot protect himself by setting up the illegality of the contract. Of similar import is Brooks v. Martin, 2 Wall. 70, 17 L. Ed. 732, and in Planters' Bank v. Union Bank, 16 Wall. 483, 498, 21 L. Ed. 473, it was held that, although an illegal contract will not be enforced by the courts, yet when the contract has been executed, and the illegal result accomplished, money acquired thereby will as between the parties be a legal consideration for an implied promise to pay. Said the court:

"But when the illegal transaction has been consummated, when no court has been called upon to give aid to it, when the proceeds of the sale have been actually received, and received in that which the law recognizes as having had value, and when they have been carried to the credit of the plaintiffs, the case is different. The court is there not asked to enforce an illegal contract. The plaintiffs do not require the aid of any illegal transaction to establish their case. It is enough that the defendants have in hand a thing of value that belongs to them."

In Willson v. Owen, 30 Mich. 474, Judge Cooley said:

"It is true that the trials of speed for money at the horse fair and the selling of pools under the auspices of the association were illegal; but there is no illegality in the promise, express or implied, of the defendant to pay over to the plaintiffs the money received for them, from whatever source derived, or from whatever transaction springing."

This doctrine has been applied to illegal transactions in stocks on margins similar to that which according to the petitioner's contention is here presented, and it has been held that, where the illegal transaction has been closed and money belonging to the customer is shown to be in the hands of the broker, the latter may be required to pay the

same. Peters v. Grim, 149 Pa. 163, 24 Atl. 192, 34 Am. St. Rep. 599; Overholt v. Burbridge, 28 Utah, 408, 79 Pac. 561; Clarke v. Brown, 77 Ga. 606, 4 Am. St. Rep. 98; McDonald v. Lund, 13 Wash. 412, 43 Pac. 348.

The petition is denied, with costs.