SINCLAIR HOUSTON FEDERAL CREDIT UNION

v.

HENDRICKS et al.

No. 12709.

Court of Civil Appeals of Texas.

Galveston.

May 6, 1954.

Rehearing Denied May 27, 1954.

W. H. Vaughan, Jr., and Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellant.

Bracewell & Tunks and Joe H. Reynolds, Houston, for appellee Reese.

CODY, Justice.

This was an action by the Sinclair Houston Federal Credit Union to recover sums of money totaling $27,686.20, which had been embezzled from it by its cashier, one George Cruse, beginning February 25, 1948, and continuing until the defalcations were discovered about February 13, 1949. It was alleged in plaintiff's petition that said sums, so embezzled, were by the said Cruse placed with E. L. Reese, an employee at the Sinclair Refinery, and that he thereafter placed the bets with Frank Hendricks, a bookmaker. The action was brought against the said Hendricks and the said Reese. The said Credit Union also made Mrs. Reese a party defendant, but has waived any claim against her. Perhaps it should here be noted that Cruse was not made a party to the action.

The theory on which appellant Credit Union has sued Hendricks and Reese to recover from them money which Cruse em-

bezzled from it is (1) that the title to the embezzled money never passed out of the Credit Union because neither Reese nor Hendricks received same in due course of trade, and that by taking possession thereof for an unlawful purpose, they converted same to their own use so far as the true owner was concerned; and (2) that they were liable to the true owner as for money had and received, or "in assumpsit." The Credit Union sued both Reese and Hendricks as principals, and further sued Reese as being an agent of Hendricks.

For the purposes of this appeal, the basis on which appellant has sought recovery has been sufficiently indicated above. Any further pleadings of appellant which need be here considered will hereafter be stated under the discussion of points raising issues in connection therewith.—The defendants Hendricks and Reese filed separate answers below but only Reese has filed a brief here, and hereafter when we use the term "appellee" it will be intended to apply to him unless the contrary is made to appear. Insofar as the allegations contained in the defendants' answers relate to matters raised on this appeal, they will hereafter be discussed in connection with points which in any way deal therewith. At the conclusion of appellant's (plaintiff's) evidence the court, in compliance with motions therefor, directed a verdict in favor of appellees and rendered judgment thereon against appellant.

Appellant has predicated its appeal upon five points, but before stating appellant's points, we deem it more logical to state two points raised by appellee. The first such point is an independent cross-point which reads: "There was no error in granting appellees' motion for an instructed verdict because appellant failed to show any interest in the case such as would authorize it to prosecute this appeal." In our opinion appellant showed an interest in the subject matter of this suit and we accordingly overrule the stated cross-point.

In support of the quoted cross-point appellee calls attention to a letter from appellant's attorneys to the attorney of appellee

Hendricks which was introduced in evidence and which reads in part: "The insurance companies mentioned [hereafter shortly identified] have now paid the Credit Union a total of $27,686.20 and have taken from the Credit Union an assignment of all of its rights against third parties growing out of these transactions, including the right to bring suit in the name of the Credit Union. These two insurance companies have now instructed us to go ahead and press their claims for reimbursement * * *." Appellee further states in support of his said cross-point that "The parties stipulated as to the agreement entered between Cruse and the insurance companies wherein they recited the amount of the debts and payments and also that the obligation arose out of a 'loss incurred by Sinclair Houston Federal Credit Union, which loss was paid and reimbursed to Sinclair Houston Federal Credit Union by Fidelity and Deposit Company of Maryland and American Motorists Insurance Company.' * * *." The agreement just referred to as entered into between the parties was designated on its face as "Acknowledgment of Debt" and reads as follows:

"The State of Texas
"County of Harris

"Know All Men By These Presents: The undersigned hereby acknowledges that the claims, causes of action or debts in favor of Fidelity and Deposit Company of Maryland in the sum of $23,740.47 and in favor of American Motorists Insurance Company in the sum of $3,945.33 both against and owed by George W. Cruse, together with 6% interest from the date said obligations arose, and upon which there is now a credit of $750.00 which has been paid upon said obligations, are just, and that they are and have been due; that said obligations arose out of a loss incurred by Sinclair Houston Federal Credit Union, which loss was paid and reimbursed to Sinclair Houston Federal Credit Union by Fidelity and Deposit Company; that the undersigned intends to waive the statute of limitations, with regard thereto and hereby promises to pay the balance of said obligations, together with interest at 6% to Fidelity and Deposit Company of Maryland and American Motorists Insurance Company on demand.

"Executed in triplicate, this the ——— day of December, 1950.
"'s' George W. Cruse
George W. Cruse."

The gist of appellee's said cross-point is the claim that the Credit Union in whose name the suit was brought had no interest in the subject matter of the suit, but that to the contrary the right to recover thereon had become vested in the aforesaid insurance companies. However, appellant has stated in its reply brief, and appellee has made no denial, that appellee has raised the matter contained in the aforesaid cross-point for the first time on this appeal. Furthermore, it is indicated by the record that this case was tried below on the theory that the insurance companies were prosecuting their claim in the name of their assignor, the Credit Union, and it appears from the record that the term "plaintiff" was used therein as referring indifferently to the Credit Union and to the insurance companies. For instance, during the trial both Hendricks and Reese filed separate trial amendments which were, so far as is here material, identical. Therein they alleged that on the ——— day of December (sic) 1952, the said Cruse executed a promissory note (meaning the acknowledgment of debt hereinabove set out) in satisfaction and discharge of his obligation to *plaintiff;* that the note was given in payment of the loss to *plaintiff* for money stolen by Cruse, and also a demand note bearing interest at the rate of 6% per annum and was accepted in full satisfaction and payment of what was due *plaintiff* resulting from the theft by Cruse, and further alleged "that by the execution and acceptance of payments on said note the amounts sued for by *plaintiff* against the defendants have been satisfied and paid." (Emphasis has been supplied.) And again, in the appellee's several motions for directed verdicts, they alleged that the evidence showed, as a matter of law, that *plaintiff* had accepted the "promissory note" in satisfaction of all claims that *plaintiff*

had against any parties as a result of Cruse having stolen money from *plaintiff*.

It will be noted that the "promissory note" upon its face shows that it was given to the insurance companies, and of course the undisputed evidence showed that the money was stolen from the Credit Union. And, it is further to be noted in this connection that in their motions for directed verdicts no ground was urged therein to the effect that the *plaintiff* (meaning the Credit Union in this instance) was not a party at interest. See Rule 268, T.R.C.P. So, it thus appears that the appellees participated in trying the case below on the theory that the insurance companies were exercising their right to sue in the name of the Credit Union, which right they had by subrogation as well as assignment. Had appellees questioned such right below, the insurance companies could have submitted additional pleading and proof to the court below (out of the hearing of the jury, as they were insurance companies).

■ We further deem it proper to dispose of appellee's following point before taking up appellant's point, namely: "Plaintiff's evidence conclusively showed that the Acknowledgment of Debt by Cruse to suspend the statute of limitation was given in satisfaction of the claim, and that no suit could be maintained for the original conversion." We overrule the point.

The acknowledgment of debt referred to in appellee's point just quoted has been copied under what we have termed appellee's independent cross-point. Appellee relies upon such cases as Otto v. Halff, 89 Tex. 384, 34 S.W. 910, to support the position taken under this point. The court there held at page 911 of 34 S.W. that where " * * * a debt exists, and a note is given therefor by the debtor, the right of action is suspended upon the original consideration until the note becomes due, and if it is unpaid at that time the creditor may elect to sue upon the original indebtedness, or upon the note, unless the note was accepted as payment of the pre-existing debt." The rule just quoted from Otto v. Halff has no application here.

In the first place, prior to the execution of the acknowledgment of debt Cruse was only one of three "debtors" to which appellant could look for payment of the obligation in question if the theory on which appellant is bringing this suit is valid. Next, the only change which was effected in Cruse's obligation by the instrument which he executed was to place said obligation in written form. Placing the said obligation in written form had the effect of suspending the running of the statute of limitations for four years from the date the instrument was executed by Cruse. Before the instrument was executed by Cruse, his obligation to the appellant was payable on demand. After his execution of the instrument it continued to be by the terms thereof, payable on demand. Before the execution of the instrument the claim bore interest at the rate of 6% per annum. After the execution the claim continued to bear interest, so far as Cruse was concerned, at the rate of 6% per annum. Of course his obligation as contained in the instrument was contractual, whereas he was only liable in tort prior to the execution. But the evidence was such that had the appellant brought suit against Cruse it could have reduced the obligation to judgment, which to all intents and purposes would be identical with the obligation as contained in the written instrument.

■ There is nothing upon the face of the instrument to suggest that the insurance companies accepted said instrument in full satisfaction of their claims against appellees or that they intended thereby to release their claims against appellees. Though appellees plead this to be true, they failed to make any proof thereof. The record contains a bill of exception which reflects that Cruse testified to certain legal conclusions that the instrument was given in full satisfaction of the claims of appellant but said bill of exception was taken out of the hearing of the jury and appellee bases no complaint upon the bill of exceptions on this appeal. The burden was on appellee to establish that the written instrument aforesaid was given in full satisfaction of the claims here asserted by appellant and this

burden has not been discharged. Appellee cannot claim here that said acknowledgment of debt constituted a bar to appellant's action against him.

■ We now come to the consideration of appellant's first point complaining of the court's action in granting the motion of Hendricks for an instructed verdict. We have concluded that this point is well taken and sustain it. The evidence introduced by appellant showed, among other things, the defalcations of which Cruse was guilty; and further showed that all the sums which Cruse had so embezzled, he placed with Reese to be bet on the horses, and that Reese thereafter did place same with Hendricks or with one Hawkins, an employee of Hendricks. Said evidence further showed that some eight or more employees at the Sinclair plant, during the period that Cruse was embezzling money from the Credit Union, were also placing money with Hendricks. And Cruse testified that Reese told him he was getting a commission from Hendricks for handling for him the bets which were being placed from the Sinclair plant. The evidence further showed that Reese furnished Cruse with daily racing forms, and that these racing forms determined the betting odds in their transactions. Further, the evidence showed that Reese received no compensation from the men at the Sinclair plant for placing their bets with Hendricks.

■ This case, we believe, is the first one to ever come before a Texas court in which the owner of stolen money has brought an action to recover the amount stolen from one who won it, as an incident of gambling, from the thief. However, the point is not a novel one in other states. It was held by the Supreme Court of Arkansas in Simpson v. Brooks, 208 Ark. 1093, 189 S.W.2d 364, 365, that " * * * one whose property is appropriated by a third person in an unlawful manner and delivered to a gambler as the incident of betting, is permitted at common law to, recover *because ownership has not in fact passed;* but not so as to gambling transactions between participants who used their own

money." (Emphasis supplied.) As supporting its holding the court cited cases from Georgia, Vermont, Illinois, Colorado, Oklahoma, Indiana and Kansas. As noted above, Hendricks has filed no brief here. Even appellee does not contest the correctness of the holding in question, but, as will hereafter appear, he contends it has no application as to him. And we now discuss Hendricks' liability. It seems to be settled that ignorance of the fact that the money was stolen is no defense to a suit brought to recover it from a gambler who obtained it by betting. Joslyn v. Downing, Hopkins & Co., 9 Cir., 150 F. 317; Hartford Accident & Indemnity Co. v. Benevento, 1945, 133 N.J.L. 315, 44 A.2d 97. Even in a transaction which is otherwise legitimate, if a party to it receives money which he knew was stolen, he would be accountable to its owner. The general rule is that the owner of stolen property can recover it or its value from anyone who has received it and exercised dominion over it. But money, under certain circumstances, is an exception to the general rule. This because of the necessity that money pass freely in commercial transactions. One who receives money which has been illegally obtained by a third party in due course of business, in good faith, and for valuable considerations, can keep it without liability to him from whom it was stolen. See Texas State Bank of Walnut Springs v. First National Bank of Meridian, Tex.Civ. App., 168 S.W. 504; Mashek v. Leonard, Tex.Civ.App., 186 S.W.2d 745.

But, where stolen money is acquired in an unlawful manner, the reason for the exception to the rule fails. It is not the policy of the law to protect a gambler who has won stolen money. As is stated in Simpson v. Brooks, supra, the ownership of such stolen money does not pass to the gambler who won it.

■ Appellant's second point complains that the court erred in directing a verdict for appellee. We have found much greater difficulty in deciding this point than the last preceding one. No case has been cited to us holding an agent equally liable with his

296

gambler principal for the return of stolen money which the gambler won. There was evidence from which a jury could have found that appellee was acting in the transactions as agent for Hendricks. And certainly he was acting either as the agent of Hendricks, or as the agent of Cruse in placing the bets. But assuming that appellee was found to have acted as the agent for Hendricks, would that fact render him liable to the Credit Union (or its assigns) for the sums which Cruse stole and which Hendricks won? In a legitimate transaction, an agent is ordinarily liable only to his principal. And even in this sort of transaction, and insofar as appellant is suing to recover for money had and received, only Hendricks ought to be held liable. Only Hendricks, not appellee, became unjustly enriched by the stolen money which Cruse lost to Hendricks.

However, it is stated in 42 Tex. Jur. 526 that conversion "may be committed by receiving property from one who had no authority to transfer it," citing Kempner v. Thompson, 45 Tex.Civ.App. 267, 100 S. W. 351, and Shilling v. Shilling, Tex. Civ.App., 35 S.W. 420. Again at page 536 it is stated that an agent who has assisted his principal in converting property to the use of the principal is personally liable to the true owner for the loss sustained. Under the evidence in this case it could have been reasonably inferred that appellee, if he were found to have acted as the agent of Cruse, aided (unknowingly) Cruse to convert the stolen money. The jury could also readily have inferred that appellee, if he were found to have acted as agent of Hendricks, aided Hendricks in converting the stolen money. In other words, though it be found that appellee exercised dominion over the stolen money (not knowing it to be stolen) only as the agent of a principal, he is chargeable as a principal because he was acting in an illegal transaction, and he knew he was acting in an illegal transaction.

We believe it unnecessary to determine whether the evidence would have supported a finding that appellee, in the exercise of reasonable care, would have concluded from the heavy losses sustained by an assistant treasurer, who was making but $300 a month, that such assistant treasurer was not losing his own money.

We have reached the conclusion that we are constrained to hold that the court erred in instructing a verdict in favor of appellee.

Appellant's further points complain of the court's action in refusing to reopen the case, after both sides had closed, to enable appellant to offer evidence which it had failed to offer before closing; also in refusing to grant appellant's motion to postpone the case after appellant had offered its evidence without any hindrance by the court, and both sides had closed; also in refusing to allow appellant to file an additional trial amendment after both sides had notified the court that they had closed. We overrule such points. No abuse of discretion is shown.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.