**TRANSAMERICA INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**H. Alan LONG, District Director, Internal Revenue Service, IRS, John H. Bingler, former District Director, Internal Revenue Service, and the United States of America, Defendants.**

**Civ. A. No. 69–1203.**

United States District Court,
W. D. Pennsylvania.

Oct. 12, 1970.

Edward A. Mihalik, Weis & Weis, Pittsburgh, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., by W. Wendell Stanton, Asst. U. S. Atty., Pittsburgh, Pa., and Jeffrey D. Snow, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendants.

OPINION AND ORDER

MARSH, Chief Judge.

The plaintiff, Transamerica Insurance Company, brought this action against the present District Director of Internal Revenue, a former District Director, and the United States of America. The action against the United States of America has been withdrawn by the plaintiff.[1]

The complaint was filed October 17, 1969. In due course an answer was filed by the defendants. Thereafter defendants moved for summary judgment on the grounds that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. In support of their motion, the defendants filed an affidavit of Revenue Officer Klaus, an employee of the District Director of Internal Revenue at Pittsburgh, Pennsylvania, and an affidavit of the defendant, John H. Bingler, the District Director of Internal Revenue at Pittsburgh from May 1, 1956 to December 31, 1965. Also to be considered are the written answers to interrogatories and supplemental interrogato-

1. See plaintiff's brief, pp. 4, 12.

ries served upon defendants by the plaintiff.

Section 1340, 28 U.S.C.A., is relied on for jurisdiction.[2] It is our opinion that there is no genuine issue of material fact, that the court does not have jurisdiction, and the complaint should be dismissed.

From the pleadings it appears to be undisputed that on April 22, 1964, the plaintiff was surety on a bond in favor of Punxsutawney National Bank, Dayton, Pennsylvania; that on that date William Hanzl, acting in conspiracy with others, robbed the bank of the sum of $18,500 for which crime he was later apprehended and convicted. The plaintiff reimbursed the bank for the loss incurred in the robbery, and the bank assigned to plaintiff all its rights to the robbery proceeds.

It appears from the affidavits and answers to interrogatories that on April 24, 1964, two days after the robbery, Hanzl paid in excess of $4,500 to Revenue Officer Francis Klaus in satisfaction of his tax liability for the years 1960 and 1962.[3] Of this payment, $565.-54 was in cash, and on the same day with that cash Klaus purchased a cashier's check payable to the Internal Revenue Service in that amount from Mellon National Bank. The remainder of the amount received by Klaus was in the form of a cashier's check and money orders which were deposited by him in an IRS account in the People's Union Bank, McKeesport, Pennsylvania, on April 28, 1964.

Hanzl was arrested on April 29, 1964. Shortly after his arrest on that date he stated to agents of the Federal Bureau of Investigation "that he had been given $2,000 as proceeds of the robbery and that he had paid this money to the Internal Revenue Service" (Answer to Interrogatory No. 18).

Thereafter, "agent Klaus was told that Mr. Hanzl might have robbed a bank to pay tax obligations" (Answer to Supplemental Interrogatory No. 1), and that "Mr. Hanzl might have been involved in a robbery of the Dayton Branch of the Punxsutawney National Bank on April 22, 1964, and that this robbery might have made possible his April payments to the Internal Revenue Service" (Answer to Interrogatory No. 15).

■ At the threshold it is to be observed that since the 1963 amendment to Rule 56(e), Fed.R.Civ.P., summary judgment will not be denied merely because the pleadings create the appearance of a dispute. From the written depositions and affidavits of the defendant Bingler and Revenue Officer Klaus, it appears that on April 24, 1964, Hanzl gave Klaus cash, a cashier's check and money orders in satisfaction of his tax liabilities, and it was not until four days later, after the cash, cashier's check and money orders had been deposited in banks, that Klaus was told by an FBI agent that Hanzl might have robbed a bank to pay his tax obligations. Since these facts appearing in the affidavits and answers to interrogatories have not been traversed by plaintiff, it does not claim, and indeed could not claim, that it is sheltered by the contrary allegations in its complaint to the effect that the defendants wrongfully received and applied the

2. Idem, p. 4. The complaint asserted that this court has jurisdiction "of the subject matter under the authority of 28 U.S.C. § 1340 as well as under 28 U.S.C. § 1346 (a). Plaintiff also relies upon 28 U.S.C. § 2410 and 28 U.S.C. § 2463 in pursuing its claims against the respective defendants."

3. During the remainder of 1964, additional payments, totaling approximately $657 were made to the IRS on Mr. Hanzl's behalf (Answer to Interrogatory No. 7) by Mr. Hanzl's mother and Dorothy Saus, the manager of his business. The money used to make these payments came from the proceeds of Hanzl's business (Answer to Supplemental Interrogatory No. 2).

tax payments.[4] Robin Construction Company v. United States, 345 F.2d 610, 614–615 (3d Cir.1965) ; Bobo v. Page Engineering Company, 285 F.Supp. 664 (W.D.Pa.1967), aff'd 395 F.2d 991 (3d Cir.1968). It thus appears that there is no genuine issue of material fact and the case should be decided on the basis of the legal issues presented.

■ Since the United States has been dropped as a party, this action is being pursued against the District Directors of Internal Revenue Service in their individual capacities and any recovery must be based upon their wrongful seizure and appropriation of the bank's money to apply on Hanzl's taxes. A District Director who wrongfully seizes and applies property to tax payments is subject to an adverse judgment against him even though he paid the proceeds into the Treasury of the United States. United States v. Kales, 314 U.S. 186, 197–198, 62 S.Ct. 214, 86 L.Ed. 132 (1941) ; Stuart v. Chinese Chamber of Commerce of Phoenix, 168 F.2d 709, 713 (9th Cir.1948) ; Oil City National Bank v. Dudley, 198 F.Supp. 849, 850 (W.D. Pa.1961).[5]

■ It is important to recognize that actions against a District Director are limited to claims showing that the Director has been guilty of wrongful conduct in the collection or exaction of taxes. Before this court can continue to exercise jurisdiction in this case, there must be an issue of fact which, if resolved in favor of the plaintiff, would establish wrongdoing on the part of one or both of the District Directors resulting in a judgment to recover the money. Pennsylvania Turnpike Commission v. McGinnes, 268 F.2d 65, 67–68 (3d Cir.

1959). There is no such issue, hence no jurisdiction.

■ The affidavits and interrogatories have raised this jurisdictional question. If jurisdiction does not exist the case must be dismissed by the court *sua sponte*. Mansfield, C. & L. M. Railway Co. v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884) ; Shahmoon Industries, Inc. v. Imperato, 338 F.2d 449 (3d Cir.1964).

■ As pointed out in Pennsylvania Turnpike Commission v. McGinnes, *supra*, 268 F.2d page 68, the many cases permitting personal claims against District Directors for wrongful property seizure and tax collection have no relevance to the present case. There was no wrongful act on the part of Revenue Officer Klaus in receiving the voluntary payments from Hanzl for his income taxes. The uncontroverted affidavits show conclusively that neither Revenue Officer Klaus nor District Director Bingler had any reason to suspect that Hanzl had been involved in the robbery of the Punxsutawney Bank until April 29, 1964, *after the payments were deposited in banks*. The defendant Long did not become District Director of Internal Revenue until after December 31, 1965. His only apparent connection as a defendant is that he has been notified of the plaintiff's claim.

A voluntary payment on account of taxes must be distinguished from a wrongful seizure. Pennsylvania Turnpike Commission v. McGinnes, *supra*. Since it appears that Hanzl's payments were voluntary and received innocently, the court does not have jurisdiction to entertain this suit even though the revenue officials, after the payments had

4. A disputed issue is whether the tax payments were covered into the Treasury of the United States. We think this factual question is immaterial for if plaintiff was entitled to recover, the amount of the judgment would be paid by the Treasury upon the appropriate court certificate. 28 U.S.C.A. § 2006. Cf. Oil City National Bank v. Dudley, 198 F.Supp. 849,

850 (W.D.Pa.1961), holding that a nontaxpayer had a right to recover from a District Director who "in effect * * * *wrongfully seized* * * *" the plaintiff's money and covered it into the Treasury. (Emphasis supplied.)

5. See footnote 4, supra.

been made and deposited, heard that the cash, cashier's check, and money orders used to make Hanzl's April 22nd tax payment may have been derived from money stolen from the Punxsutawney Bank.

■ But even if jurisdiction existed, the plaintiff would not be entitled to recover. Assuming that the money Hanzl stole provided the means for him to pay his income taxes, most of it had been deposited and exchanged for a cashier's check and money orders and all the funds had been deposited in bank accounts by the revenue officer before any revenue official knew of the robbery. It seems established that after stolen money has been negotiated, the victim-owner, or one standing in his shoes, cannot recover a like amount from a third-party recipient unless it can be proved that the recipient had prior knowledge that the money was stolen.

■ It is a rule of law that title to currency passes with delivery to the person who receives it in good faith and for valuable consideration. It seems clear that an obligation to pay income taxes constitutes a valid preexisting debt, and the transfer of currency in payment of that debt is for value. Rankin v. Chase National Bank, 188 U.S. 557, 23 S.Ct. 372, 47 L.Ed. 594 [6] (1903); Knapp v. First Nat. Bank & Trust Co., 154 F.2d 395, 398–399 (10th Cir.1946). See also, Holly v. Domestic & Foreign Missionary Society, 180 U.S. 284, 21 S.Ct. 395, 45 L.Ed. 531 (1901); State National Bank of Boston v. United States, 114 U.S. 401, 5 S.Ct. 888, 29 L.Ed. 149 (1885); In re Brainard Hotel Co., 75 F.2d 481 (2d Cir. 1935); Restatement, Restitution, § 173, comment n. Thus, we hold that Hanzl's obligation to pay income taxes constituted a valid debt, and his transfer of currency in payment of those taxes was for value.

■ Likewise, it has become a general rule of the commercial world that one who takes a cashier's check or money order in good faith for a valuable consideration holds good title to its proceeds against all the world. Nothing short of actual or constructive notice that the instrument was purchased with money that was not the property of the person who offers to sell it,—that is, nothing short of *mala fides*, will defeat the holder's title to the proceeds. State National Bank of Boston v. United States, *supra*. Cf. Bull v. United States, 295 U.S. 247, 260–261, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); United States v. State National Bank of Boston, 96 U.S. 30, 24 L.Ed. 647 (1877). Thus, any revenue official who receives cashier's checks or money orders without notice that the money represented thereby was stolen may apply them without recourse in payment of the taxes of the person who gave them to the revenue official.

It is absolutely necessary for commerce and business to continue that one who receives money, cashier's checks or money orders is not put on inquiry as to the source from which the funds have been derived. It is generally impossible or impractical to discover the source of money, and for this reason one who receives money in good faith for valuable consideration prevails over the victim. Holly v. Domestic & Foreign Missionary Society, *supra;* State National Bank of Boston v. United States, *supra;* Ohio Casualty Insurance Company v. Smith, 297 F.2d 265 (7th Cir.1962); In re Brainard Hotel Co., *supra*.

Moreover, in the case *sub judice*, the claimants of the allegedly stolen funds are equally innocent parties, i. e., Transamerica on one side and the Directors of Internal Revenue on the other. The law has traditionally refused to lend its support where the equities are equal. Holly v. Domestic & Foreign Missionary Society, *supra*, 180 U.S. at p. 295, 21 S.Ct. 395, 45 L.Ed. 531; Taggart v. Keim, 103 F.2d 194 (3d Cir.1939).

6. See Charge of the trial Court at p. 562 and the affirmance thereof by the Supreme Court at p. 565.

In summary, this cause of action will be dismissed for lack of jurisdiction. There was no wrongful conduct on the part of either Director or their employee in receiving Hanzl's voluntary payments of his taxes which would confer jurisdiction on this federal court. But, if jurisdiction should exist, nevertheless, the defendants' motion for summary judgment would have to be granted because of the strong public policy behind the free negotiability of money, cashier's checks and money orders.

An appropriate order will be entered.