Argued and submitted March 31, affirmed July 15, 1987

# CITY OF PORTLAND,
*Plaintiff,*

*v.*

# BERRY et al,
*Appellants,*

*and*

# UNITED STATES NATIONAL BANK
# OF OREGON,
*Respondent.*

(A8504-02418; CA A40168)

739 P2d 1041

Annie T. Buell, Portland, argued the cause for appellants. With her on the briefs was Bruce MacGregor Hall, P.C., Portland.

Stephen K. Bushong, Portland, argued the cause for respondent. With him on the brief were John F. Purcell, and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Plaintiff brings this interpleader action to determine which of the defendants is entitled to $18,000 in $1,000 and $500 bills that its Bureau of Police acquired for use as evidence in the criminal prosecution of the thief who stole them. Defendants Berry and Kelly (appellants) seek return of the bills.[1] The trial court awarded them to defendant United States National Bank of Oregon (Bank). Berry and Kelly appeal, and we affirm.

This dispute arose after appellants' live-in attendant, Wetzel, stole nine $1,000 bills and 18 $500 bills from them.[2] Over the course of three months, Wetzel took the bills to Bank, where she converted them into smaller denominations of cash, travelers' checks, a cashier's check, savings bonds and savings accounts. During the course of its investigation and preparation for prosecution of Wetzel for theft, the Bureau of Police subpoenaed and obtained the bills.[3] After Wetzel was convicted of theft,[4] plaintiff initiated this action to determine whether they should be returned to the appellants as victims of the theft or to Bank.

Appellants' assignments of error raise an issue of first impression in this state. First, they argue that the trial court should have applied the general rules of replevin to reach its disposition. Bank successfully argued below that the applicable rule is the "money rule,"[5] which provides that a third party

---

[1] Throughout the trial and in their briefs, Berry and Kelly refer to their theory as replevin. That confuses the issue. The City's interpleader action sought a determination of who was entitled to possession of the bills. Although replevin principles are useful as a basis for analysis, we do not rely on replevin to reach the result in this case.

[2] The $1,000 and $500 bills recovered from the bank were only a part of the valuables that were stolen. In January, 1986, Berry and Kelly obtained a default judgment against Wetzel for $131,085.50 on a complaint that alleged that Wetzel took silver certificates, 50, 20, ten and two dollar bills, coins and ingots valued at $54,834 and that she failed to repay a $4,100 loan. Berry and Kelly sought to recover the value of the stolen items, repayment of the loan and $100,000 in punitive damages.

[3] When the police first requested the bills, Bank retained four $1,000 bills and 14 $500 bills in its vault. The other bills had been purchased by bank employes and customers. Bank repurchased the bills and turned them over to the police pursuant to the subpoena.

[4] She was convicted in a stipulated facts trial to the court and was sentenced to five years in prison with a 14-month minimum and ordered to pay full restitution of $48,934.00.

[5] Each party asserts that the rule which it espouses is the general rule to which the

who takes stolen money in good faith and for valuable consideration obtains good title and prevails over the victim of the theft. Appellants contend that the "money rule" should not apply here, because the bills are not "money" in the sense that they are not normal cash and that, even if they are "money," the policy reason for the rule does not apply when the bills in question are of $500 and $1,000 denominations.

■    We reject appellants' contention that the bills are not "money." Although the United States Treasury has not printed $500 and $1,000 bills since 1945 and has been systematically taking them out of circulation and destroying them since 1969, their rarity does not affect the fact that the bills continue in circulation and are legal tender.

■    As a general rule, an action for replevin will lie for recovery of personal property to which the plaintiff has the right to immediate possession. Money is personal property. If the action for recovery of money fails, it is usually because the specific money is not sufficiently identifiable as the plaintiff's property. When, however,

> "specific bills and coins are identifiable because of serial numbers or special markings, or because they are located uncommingled at a specific exclusive place or contained within a [*sic*] identifiable container, the bills and coins, so identifiable, can be replevied." *Williams Management Enterprises v. Buonauro,* 489 So 2d 160, 164 (Fla App 1986).

*See also Spear v. Arkansas Nat. Bank,* 111 Ark 29, 163 SW 508 (1914); *Graves v. Dudley,* 20 NY 76 (1859); *Equitable Life Assurance Society of U.S. v. Branch,* 32 AD2d 959, 302 NYS2d 958 (1969); *Commonwealth v. Dean,* 245 Pa Super 322, 369 A2d 423 (1976).

■ ■    Even assuming that the particular bills are sufficiently identifiable, appellants' argument nevertheless fails. Although generally the owner of stolen property can recover it from anyone who acquires it, because a thief cannot pass title to stolen property, title to currency passes with delivery to a good faith purchaser for value. *Transamerica Insurance Company v. Long,* 318 F Supp 156, 160 (WD Pa 1970). Thus, as against the thief, appellants can assert their right of

---

opposing party's "rule" is the exception. We do not think that either rule is an exception but simply that the rules apply to different situations.

ownership. However, a third party who takes stolen money "in good faith and for good consideration will prevail over the unfortunate victim of the thief." *Kelley Kar Company v. Maryland Casualty Company,* 142 Cal App 2d 263, 298 P2d 590, 592 (1956); *see also Ohio Casualty Insurance Company v. Smith,* 297 F2d 265 (7th Cir 1962); *Transamerica Insurance Company v. Long, supra.* A similar rule applies when bearer paper is lost or stolen. The victim of the loss or theft cannot recover from a good faith purchaser for value who takes the instrument in the ordinary course of business, because the purchaser is a holder in due course. *See* ORS 71.2010(20); 73.3020(1); 73.3050; 73.3060; White and Summers, Uniform Commercial Code § 14-3 (1980). Although at least one state requires that the purchase be made in the ordinary course of business before a person who takes money in good faith and for value can obtain good title, *Sinclair Houston Federal Credit Union v. Hendricks,* 268 SW2d 290, 295 (Tex Civ App 1954), because of the necessity that currency be readily acceptable as payment for debts, we conclude that the good faith and valuable consideration requirements provide ample protection from pretextual transfers of stolen money from a thief to a third party. Accordingly, if Bank took the money in good faith and for good consideration, appellants have no ownership rights that can be asserted.

Appellants argue that the policy behind the rule, that there is a "necessity that money pass freely in commercial transactions," *Sinclair Houston Federal Credit Union v. Hendricks, supra,* 268 SW2d at 295, would not be furthered by its application when, as here, bills of these denominations are unusual and relatively rare. We do not agree. So long as the United States Treasury has not removed the bills from circulation and considers them to be legal tender, the policy underlying the rule remains viable. We do not accept appellants' argument that, because these specific bills were not freely flowing in commerce, the policy justification for the rule ceased to exist. Legal tender must continue to be freely acceptable without inquiry as to its source.

■　　Appellants also challenge the trial court's factual determination that the bills "were received by the bank in good faith [and] for good consideration."[6] In *Community Bank*

---

[6] The trial court also determined that Bank had received the bills in the ordinary course of business. Because we do not require such a finding, we will not review the evidence supporting it.

*v. Ell,* 278 Or 417, 564 P2d 685 (1977), the Supreme Court considered the Uniform Commercial Code good faith requirement of ORS 71.2010(19): "honesty in fact in the conduct or transaction concerned." The court's interpretation, which we adopt in this case, is that "[t]he appropriate standard is a subjective one, looking to the intent or state of mind of the party concerned." 278 Or at 428. (Footnote omitted.) The trial court heard evidence that the large denomination of the bills aroused the interest of Bank employes, that they asked Wetzel where she got them, to which she replied that the money was an inheritance, and that the employes considered the answer believable. The employes testified that they did not suspect that the money was stolen and we find nothing in the record that would lead us to conclude that Bank was not acting in good faith.

■    Appellants argue that Bank did not give consideration for the bills, because it paid only the face value, not the price for which they could have been purchased on the open market. Face value of legal tender is valuable consideration.

Affirmed.