**BELL ATLANTIC BUSINESS SYSTEMS SERVICES, Plaintiff,**

v.

**HITACHI DATA SYSTEMS CORP., Hitachi America Ltd., and Hitachi Ltd., Defendants.**

**No. C 93–20079 JW.**

United States District Court, N.D. California.

March 29, 1994.

Ronald S. Katz, Janet S. Arnold, Coudert Bros., San Francisco, CA, for plaintiff.

Andrew E. Paris, Kirkland & Ellis, Los Angeles, CA, Nathan Lane III, Graham & James, San Francisco, CA, for defendants.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT*

WARE, District Judge.

Defendants Hitachi America Ltd. ("Hitachi America") and Hitachi, Ltd. ("Hitachi") move to dismiss Plaintiff's, Bell Atlantic Business Systems Services ("Bell Atlantic"), First Amended Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Hitachi Data Systems ("Hitachi Data") moves for judgment on the pleadings pursuant to Federal Rule Civil Procedure 12(c) on Count I of the Complaint, which alleges conspiracy under § 1 of the Sherman Antitrust Act. 15 U.S.C. § 1.

■ Courts generally may not consider matters outside the pleadings to decide a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). If parties present matters outside the pleadings, and the court is willing to consider those matters, the court should convert the motion to a motion for summary judgment. *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297 (9th Cir.1982). Similarly, the above standard applies to motions for judgment on the pleadings. *Slevin v. Pedersen Assoc., Inc.*, 540 F.Supp. 437 (S.D.N.Y.1982). The parties before the Court have gone beyond the "four corners" of the pleadings by submitting declarations and additional facts.

Accordingly, the Court will consider Defendants' motions as motions for summary judgment. For the reasons set forth below, the Court hereby GRANTS Defendants' motions for summary judgment with respect to the Count I conspiracy charge. Additionally, the Court DENIES Defendants Hitachi's and Hitachi America's motions for summary judgment with respect to Plaintiff's remaining claims, including Plaintiff's alter ego allegations.

*BACKGROUND*

Bell Atlantic is an independent service organization ("ISO") that services high technology computer equipment manufactured by other companies. Bell Atlantic claims that Hitachi, Hitachi Data and Hitachi America ("Defendants") conspired and engaged in anticompetitive conduct to keep Bell Atlantic out of the market of servicing equipment manufactured and sold by Defendants.

Hitachi, a Japanese corporation, manufactures direct access storage devices ("Product") and exports them to Hitachi America. Hitachi America sells Product to Hitachi

Data. Hitachi Data sells Product and competes with Bell Atlantic in the Hitachi Product service market. Although not directly pleaded in the complaint, it is undisputed that Hitachi America is a wholly-owned subsidiary of Hitachi and Hitachi Data is a wholly-owned subsidiary of Hitachi Data Holding Company, which is 80% owned by Hitachi. Def. Hitachi America's P. & A. at 2.

Bell Atlantic alleges that Hitachi, Hitachi America and Hitachi Data contracted with one another to unreasonably restrain trade and prevent competition with respect to servicing older Hitachi Product in the United States. Moreover, Defendants' conduct allegedly prevents companies such as Bell Atlantic from entering the market to service new Hitachi Product. Bell Atlantic claims that Defendants' agreements violate antitrust laws because they provide that certain products not be sold and certain information not be disclosed to third parties. Bell Atlantic alleges these restrictions prevent it from obtaining parts and materials necessary to service the Product.

### LEGAL STANDARD

■ Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). To survive a motion for summary judgment, the non-moving party must show that the fact in contention is material and that it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Additionally, the non-moving party must demonstrate that the factual dispute is genuine, i.e., the evidence is such that a reasonable jury could not find for the moving party. *Id.*

### DISCUSSION

I. *Count I: Conspiracy To Restrain Trade in Violation of Sherman Act § 1*

A. *Hitachi-parent and Hitachi America-wholly-owned subsidiary*

Section 1 of the Sherman Antitrust Act provides that "[e]very contract, combination ... or conspiracy, in restraint of trade ... is declared to be illegal." 15 U.S.C. § 1. In

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768–69, 104 S.Ct. 2731, 2740–41, 81 L.Ed.2d 628 (1984), the United States Supreme Court noted that § 1 targets concerted activity as opposed to unilateral activity because, "[c]oncerted activity is inherently fraught with anticompetitive risk. It deprives the marketplace of the independent center of decisionmaking that competition assumes and demands. In any conspiracy, two or more entities that previously pursued their own interests separately are combining to act as one for their common benefit."

■ Moreover, the Court held that a parent and its wholly-owned subsidiary are legally incapable of conspiring with each other for purposes of § 1 of the Sherman Act. *Copperweld*, 467 U.S. at 779, 104 S.Ct. at 2745–46. The rationale behind this rule is that a parent corporation and a wholly-owned subsidiary have a "complete unity of interest" because their acts do not bring together economic power that previously pursued divergent goals or separate interests. *Id.* at 771, 104 S.Ct. at 2741–42. Consequently, a parent corporation and its wholly-owned subsidiaries are the same entities for antitrust purposes and their coordinated activity "must be viewed as that of a single enterprise for the purposes of § 1 of the Sherman Act." *Id.* To hold otherwise, reasoned the Court, would penalize corporations for choosing to organize their operations into subsidiaries which creates efficiency and benefits customers. *Id.* at 773–74, 104 S.Ct. at 2742–43.

■ It is undisputed that Hitachi wholly-owns Hitachi America. Accordingly, as a matter of law, Hitachi and Hitachi America cannot conspire in violation of § 1 of the Sherman Act.

B. *Hitachi-parent and Hitachi Data–80% owned subsidiary*

*Copperweld* dealt directly with the relationship between a parent corporation and a wholly-owned subsidiary. Courts have found that the *Copperweld* rationale also applies in situations between a parent corporation and a less than wholly-owned subsidiary. The

Court in *Copperweld* reasoned that parent corporations and wholly-owned subsidiaries "share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interests." *Copperweld,* 467 U.S. at 771–72, 104 S.Ct. at 2742. In other words, the entity with legal control effectively dictates the policies and direction of its subsidiary. Anytime the subsidiary ceases to act in the best interest of the parent, the parent can assert full control over the subsidiary. In this respect, the parent and subsidiary act with a unity of interest. *Id.*

Based on this reasoning, one court held that a corporation holding 51% ownership of a subsidiary, could not conspire with that subsidiary for antitrust purposes. *Novatel Communications v. Cellular Tel. Supply, Inc.,* 1986–2 Trad.Cas. 67,412, 1986 WL 15507 (N.D.Ga.1986). Similarly, General Electric could not conspire with its Canadian subsidiary since General Electric had a 91.9% ownership interest in the subsidiary. *Leaco Enter., Inc. v. General Elec. Co.,* 737 F.Supp. 605, 608–09 (D.Ore.1990). The court in *Leaco* relied on the reasoning that where the parent owns enough stock in the subsidiary to cause a merger, the subsidiary should be treated as a wholly-owned subsidiary with the same unity of interest to determine § 1 liability for conspiracy. *Leaco,* at 608–09, relying on *Sonitrol of Fresno v. AT & T,* 1986–1 Trad.Cas. 67,080, 1986 WL 953 (1986).

Plaintiff urges that a factual inquiry is necessary to assess whether Defendants can conspire in violation of federal antitrust law because *Copperweld* only extends to corporations "owned 100% in common, or a *de minimis* amount less than 100%." *Aspen Title & Escrow, Inc. v. Jeld–Wen, Inc.,* 677 F.Supp. 1477, 1486 (D.Or.1987). The Court disagrees.

Under the reasoning of *Copperweld* and its progeny, it is not necessary to conduct a factual inquiry to determine whether a parent and a subsidiary over which the parent has legal control can conspire in violation of § 1 of the Sherman Act. *Copperweld* found that a parent and a wholly-owned subsidiary are considered the "same entity" for antitrust purposes because the parent has the power to exercise full control over its subsidiary. For the same reasons, a parent and a subsidiary over which the parent has legal control cannot conspire to restrain trade. They share a unity of interest and common corporate consciousness because they work toward the same goal. It is undisputed that Hitachi owns 80% of Hitachi Data Holding Company, which owns 100% of Hitachi Data. Accordingly, the Court finds that as a matter of law, Hitachi could not conspire with Hitachi Data to restrain trade in violation of § 1 of the Sherman Act.

### C. Conspiracy between sister subsidiaries of the same parent—Hitachi Data and Hitachi America

Courts since *Copperweld* have found that two wholly-owned subsidiaries of the same parent were legally incapable of conspiring with each other in violation of § 1 of the Sherman Act. *Advanced Health–Care Serv., Inc. v. Radford Community Hosp.,* 910 F.2d 139, 146 (4th Cir.1990); *Directory Sales Management Corp. v. Ohio Bell Tel. Co.,* 833 F.2d 606, 611 (6th Cir.1987); *Hood v. Tenneco Texas Life Ins. Co.,* 739 F.2d 1012, 1015 (5th Cir.1984); *Century Oil Tool, Inc. v. Production Specialties, Inc.,* 737 F.2d 1316, 1317 (5th Cir.1984). Plaintiff cites one case, *In re Ray Dobbins Lincoln–Mercury v. Ford Motor Co.,* 604 F.Supp. 203, 205 (W.D.Va. 1984), which held that sister corporations could conspire. However, as Defendants emphasize, the Fourth Circuit subsequently disapproved this decision with its decision in *Advanced Health–Care Serv., Inc. v. Radford Community Hosp.,* 910 F.2d 139, 146 (4th Cir.1990).

Moreover, Plaintiff attempts to distinguish the cases cited above which extended *Copperweld* to sister corporations. Those cases found that two *wholly-owned* subsidiaries of the same parent could not conspire for the same reasons the parent and its wholly-owned subsidiary could not conspire. Plaintiff argues that the Court should not rely on these cases because the instant case does not involve two wholly-owned sister corporations since Hitachi America is 100% owned by Hitachi and Hitachi Data is 80% owned.

The Court disagrees with Plaintiff's distinction. As shown above, Hitachi and Hitachi America cannot conspire as a matter of law. Moreover, Hitachi and Hitachi Data cannot conspire as a matter of law. For the same reasons these companies cannot conspire, Hitachi Data and Hitachi America, sister subsidiaries of Hitachi, cannot conspire to restrain trade. They all act pursuant to the same interests and goals: the distribution of Hitachi products. Two sister subsidiaries of the same parent over which the parent has legal control are legally incapable of conspiring in violation of § 1 for the same reasons *Copperweld* found that a parent and its wholly-owned subsidiary could not conspire. Accordingly, the Court hereby GRANTS Defendants' motions for summary judgment with respect to Count I which alleges conspiracy in violation of § 1 of the Sherman Act.

II. *Allegations of Alter–Ego Relationship between Hitachi, Hitachi America and Hitachi Data as basis for liability of Hitachi and Hitachi America*

Bell Atlantic alleges Hitachi and Hitachi America are the alter egos of Hitachi Data and therefore, Hitachi and Hitachi America are legally responsible for Hitachi Data's wrongdoing.

A. *Conspiracy under the Sherman Act and Alter Ego Theory*

Bell Atlantic asserts that Defendants are attempting to "have it both ways." On the one hand, Hitachi and Hitachi America claim that they cannot be liable under § 1 of the Sherman Act because they are too closely related. On the other hand, Hitachi and Hitachi America claim that they cannot be liable under an alter ego theory because the corporations are separate entities engaging in separate activities.

Plaintiff's attempt to equate § 1 conspiracy liability with alter ego liability fails because § 1 deals with federal antitrust policies and the alter ego doctrine is governed by California corporation law. The two legal principles have different purposes and policy

considerations. It does not follow that because Hitachi, Hitachi America and Hitachi Data are legally incapable of conspiring in violation of federal antitrust laws, that Hitachi, the parent, is the alter ego of its subsidiaries. In *United National Records, Inc. v. MCA, Inc.,* 616 F.Supp. 1429 (N.D.Ill.1985) the court discredited an attempt to find an alter ego relationship between companies simply because they are legally incapable of conspiring for antitrust purposes. *Id.* at 1433.

B. *Alter Ego Liability*

Courts will "pierce the corporate veil" in situations where evidence exists that the subsidiary is a "mere instrumentality" of the parent. In other words, a parent creates the subsidiary to shield it from liability rather than for reasons of business efficiency. In California, the necessary elements of alter ego claim are 1) unity of interest and ownership such that the separate personalities of the two corporations no longer exist and 2) that an inequitable result will occur if the corporate veil is not pierced and the challenged conduct is treated as that of the subsidiary alone. *Mesler v. Bragg Management Co.,* 39 Cal.3d 290, 300, 216 Cal.Rptr. 443, 702 P.2d 601 (1985). However, a parent is not liable for the wrongful acts of its subsidiary simply because the parent wholly-owns the subsidiary. *United Nat'l Records, Inc. v. MCA, Inc.,* 616 F.Supp. 1429, 1432 (N.D.Ill. 1985).

Whether Hitachi America and Hitachi Data are "mere instrumentalities" of Hitachi and each other is a factual issue. Bell Atlantic is entitled to discovery on the alter ego issue. Genuine issues of material fact remain regarding its claim that the subsidiaries are "mere instrumentalities" of Hitachi. Accordingly, without further discovery on this issue, summary judgment is inappropriate at this stage. The Court will reserve ruling on the disposition of Plaintiff's remaining claims [1] until the resolution of the alter ego issue because Bell Atlantic has not ac-

---

1. Plaintiff has also alleged the following claims: 1) Counts II—XI: Illegal Tying Arrangements; 2) Count XII: Monopolization—Sherman Act § 2; 3) Count XIII: Unfair Competition—Cal. Bus. & Prof.Code § 17200; and 4) Count XIV: Tortious Interference with Prospective Economic Advantage—California Common Law.

cused Hitachi America or Hitachi of any direct antitrust violations. The whole basis of Hitachi's and Hitachi America's liability is their connection to Hitachi Data.

Accordingly, the Court hereby DENIES without prejudice Defendants Hitachi's and Hitachi America's motions for summary judgment on Plaintiff's remaining claims, including Plaintiff's alter ego allegations.

### CONCLUSION

1. Defendants Hitachi's, Hitachi America's and Hitachi Data's motions for summary judgment are GRANTED on Count I of the Complaint.

2. Defendants Hitachi's and Hitachi America's motions for summary judgment with respect to Plaintiff's remaining claims, including Plaintiff's alter ego allegations, are DENIED without prejudice. Defendants are directed to renew their motion for summary judgment after Plaintiff has had a reasonable opportunity to conduct discovery with respect to its alter ego allegations.

IT IS SO ORDERED.