DIAL TEMPORARY HELP SERVICE, INC., an Oregon corporation, dba Employers Overload, Plaintiff,

v.

Loren E. SHROCK, Betty Jean Shrock, individuals, and Alpha Services, Inc., an Oregon corporation, Defendants.

Civil No. 95–1242–FR.

United States District Court, D. Oregon.

Oct. 7, 1996.

Opinion Denying Reconsideration Nov. 27, 1996.

Robert L. Allen, George J. Cooper, Dunn, Carney, Allen, Higgins & Tongue, Portland, OR, for Plaintiff.

John M. Berman, Beaverton, OR, for Defendants.

## OPINION

FRYE, District Judge.

The matter before the court is the defendants' motion for summary judgment (# 16). The defendants, Loren E. Shrock, Betty Jean Shrock, and Alpha Services, Inc., move the court for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure as to all of the claims filed against them in this action.

## UNDISPUTED FACTS

In 1986, Loren and Betty Jean Shrock operated a secretarial service in Wilsonville, Oregon. Peter Szambelan is the president and the sole shareholder, along with his wife, of the plaintiff, Dial Temporary Help Service, Inc. (Dial). A temporary help service places employees in the offices of its employer-customers to perform on a temporary basis various office, clerical, and industrial tasks. In May of 1987, Dial and the Shrocks entered into an oral contract whereby the Shrocks agreed to operate a temporary help service in Wilsonville, Oregon to be known as "Employers Overload." Although Szambelan later presented two different written contracts to the Shrocks in an effort to memorialize the oral contract, the parties never executed a written contract.

On January 19, 1988, Dial registered the assumed business name, "Employers Overload of Portland." On March 31, 1988, the Minnesota corporation, "Employers Overload Company," terminated its operations in the State of Oregon and assigned to Peter Szambelan all rights to the name, Employers Overload. Later in 1988, Szambelan assigned all of his rights in the name, Employers Overload, to Dial. Thereafter, Dial's business dealings were transacted under the name, Employers Overload.

Several months after Dial and the Shrocks had entered into the oral contract in May of 1987, the Shrocks leased a larger office space in Wilsonville, Oregon and paid the costs of operating the office. Dial was not a party to the lease and did not pay any of the day-to-day expenses of maintaining the office. The Shrocks hired the office staff, solicited their employer-customers, and recruited temporary employees whom they placed with their employer-customers.

During the first year of the contract, the Minnesota corporation, Employers Overload Company, provided the billing, payroll and accounting services for the Shrocks' business, Employers Overload, from its office in the State of Minnesota. When Employers Overload Company from Minnesota terminated its operations in the State of Oregon in 1988, Dial provided the billing, payroll and accounting services for the Shrocks' business, Employers Overload. Thereafter, all of the office staff and temporary employees of the Shrocks' business, Employers Overload, were on Dial's payroll, and their paychecks were written on Dial's bank account. All unemployment, workers' compensation, and wage and hour claims were filed against Dial and not the Shrocks. Dial billed the Shrocks for 100% of the employees' wages. The Shrocks arranged for employee health insurance directly rather than through Dial.

The employer-customers of the Shrocks paid their bills to Dial. From this revenue, the wages for the office staff and temporary employees, plus all payroll taxes, and some miscellaneous expenses such as workers' compensation insurance were paid. The amount of money remaining in Dial's account after the payment of wages, payroll taxes, and miscellaneous expenses was called the gross profit. The gross profit was evenly split between the Shrocks and Dial when both the temporary employee and the employer-customer was associated with the Shrocks. The Shrocks received 25% of the gross profit if either the temporary employee or the employer-customer was associated with another office of Employers Overload. From their share of the gross profit, the Shrocks paid their normal operating expenses, such as the costs for the telephone, advertising, rent, office supplies, and accounting.

Peter Szambelan provided the Shrocks with certain Employers Overload forms, job applications, and job testing materials when the Shrocks started their Employers Overload business. The Shrocks made some changes to these forms over the years. Business files and records of the temporary employees and the employer-customers of the Shrocks were created and maintained by the Shrocks in their office.

On January 26, 1995, the Shrocks notified Szambelan that they were terminating their contract with Dial and were going to stop operating their business under the name of

Employers Overload because they believed that Szambelan was competing with them in their territory. Shortly thereafter, the Shrocks notified their employer-customers and their temporary employees that they were no longer contractually required to operate as Employers Overload.

The Shrocks changed the name of their business to Quest Temporary Services. The Shrocks told their employer-customers and their temporary employees that each was free to do business with whomever they wished. The temporary employees of Employers Overload who stayed with the Shrocks under their new business name of Quest Temporary Services were supplied by Quest Temporary Services with applications for employment, W–4 forms, I–9 forms, and new time cards for use the following week.

Prior to January 26, 1995, 171 temporary employees worked for the Shrocks' business, Employers Overload, servicing 25 employer-customers. A week after the Shrocks terminated their contractual relationship with Dial, 34 temporary employees and five employer-customers remained with Dial's business, Employers Overload of Portland. The others had signed up with Quest Temporary Services, the Shrocks' new business.

In May of 1987, when the Shrocks began their business, Employers Overload, they continued to use the telephone number that they had obtained for their secretarial service. Because both Dial and the Shrocks had placed advertisements that listed the telephone number as the telephone number of Employers Overload, the Shrocks obtained a new and separate telephone number when they ended their relationship with Peter Szambelan and Dial and when they stopped operating as Employers Overload. The Shrocks instructed the telephone company to intercept all calls to their former telephone number and to provide the callers with a message advising them as follows: "Thank you for calling. You have reached 682–1278. We are now Quest Temporary Services in Wilsonville, and our new number is 682–9292. For the Employer's [sic] Overload office near Washington Square, the number is 624–8000." Affidavit of Geoffrey Hunnicutt, p. 2.

Before the action was removed to this court from the Circuit Court of the State of Oregon for the County of Washington, Judge Milnes held an evidentiary hearing prior to issuing provisional process. He made the following findings on March 3, 1995: (1) the Shrocks were the agents of Dial until January 26, 1995; (2) the office records are the property of Dial; and (3) the office records contain trade secrets.

## CONTENTIONS OF THE PARTIES

Dial contends that the conduct of the Shrocks constituted the torts of theft of trade secrets and theft of confidential files. Dial also contends that the Shrocks breached their contract, wrongfully interfered with the contractual and prospective business relations of Dial, breached their fiduciary duty to Dial, and unfairly competed with Dial. Dial also contends that the Shrocks wrongfully created confusion by using the name "Employers Overload." The Shrocks have moved the court for summary judgment in their favor on all claims, contending that they operated an independent business as a sublicensee of Peter Szambelan with the right to use the name Employers Overload.

## APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976).

## ANALYSIS

### Effect of Judge Milnes' Findings

On March 1, 1995, following a show cause hearing in which Dial sought a preliminary

injunction, Judge Milnes found that the files and records of the Shrocks' business, Employers Overload, were the property of Dial.

The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits. The findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at a trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). The decision of Judge Milnes to grant a preliminary injunction does not establish the "law of the case" so as to estop any of the parties from arguing the issues again or this court from considering them at the trial on the merits. *See City of Angoon v. Hodel*, 803 F.2d 1016, 1024 n. 4 (9th Cir. 1986), *cert. denied*, 484 U.S. 870, 108 S.Ct. 197, 98 L.Ed.2d 148 (1987).

Relevant testimony at the show cause hearing, however, is admissible evidence which can be used when determining this motion for summary judgment.

### Sublicensees or Agents

There is a threshold question which must be addressed before Dial's claims can be discussed. Were the Shrocks agents of Dial, or did the Shrocks operate an independent business as sublicensees of Peter Szambelan? Agency is the fiduciary relationship which results when one party consents to having another party act on its behalf subject to its control, coupled with the consent of the other party to so act. There need be no formal contract for such a relationship to exist. *Jones v. Herr*, 39 Or.App. 937, 940, 594 P.2d 410 (1979), *citing* Restatement (Second) of Agency § 1 (1958). On the other hand, "[t]here can be no agency relationship unless the purported principal has some control over his purported agent. A business organization which operates in its sole and unlimited discretion is not an agent but a principal." *Kuhns v. State Tax Comm'n*, 223 Or. 547, 555, 355 P.2d 249 (1960), *citing* Restatement (Second) of Agency, §§ 1, 14.

In support of their contention that they operated an independent business, the Shrocks provide the following facts by way of affidavit: (1) the office employees of their business, Employers Overload, were hired and fired by the Shrocks without consultation with Dial; (2) the Shrocks advertised in the newspaper for their employees at their own expense; (3) Dial had no input regarding (a) the amount of money that the Shrocks paid their temporary employees, (b) where these temporary employees were assigned, or (c) whether or not the temporary employees remained employed with the Shrocks; (4) the Shrocks bore the costs for all of their employees; (5) the Shrocks leased, furnished and operated their own office and paid all of the expenses relating to that office; (6) the Shrocks used certain forms provided by Peter Szambelan, but altered others to fit their needs without consultation or approval from Dial; (7) the Shrocks independently determined when to permit employer-customers to hire the temporary employees placed by them; (8) the Shrocks sought out and developed their own list of employer-customers without the aid of Dial; (9) the Shrocks used Dial for payroll, billing and accounting services as a convenience; (10) a written employment agreement between Employers Overload and Dorothy Seton, its sales manager for the Beaverton branch of Employers Overload, provides that Seton is entitled to a commission on sales made from the office of the Shrocks' Employers Overload on the basis that it is a "noncompany owned office;" and (11) a written sublicensing agreement between Peter Szambelan and Ray Peck states that the sublicensing agreement does not form a fiduciary relationship between them.

As evidence that the Shrocks were agents of Dial, Dial submits the following facts, most of which are established through the affidavit of Peter Szambelan or through testimony presented at the show cause hearing: (1) Dial retained authority to hire and fire the employees who worked in the Shrocks' office; (2) the Shrocks used many forms from Employers Overload, including a form used in evaluating secretarial skills, a profile indicator test used to screen temporary employees, an application for light industrial employment, and employment applications for the office staff; (3) Dial directed the

manner in which the office billed for the overtime work of temporary employees; (4) Dial managed the accounts receivable and gave direction to the Shrocks to improve the performance of the office in managing accounts receivable; (5) Szambelan interceded with the administrative office when the Shrocks did not submit time cards in a timely fashion, even offering to provide the Shrocks with a fax machine; (6) Dial exercised supervision and control over the Shrocks when the Shrocks charged liquidation fees to employer-customers who hired temporary employees as permanent employees; (7) Dial directed the manner in which the Shrocks submitted time cards; (8) Dial directed the manner in which the Shrocks identified codes for classes of employees for the purpose of workers' compensation claims; (9) Dial absorbed audit deficits totaling $30,947.00 for improper reporting of workers' compensation classifications; (9) Dial governed responses to employer-customer complaints; (10) Dial directed the actions of the Shrocks in assigning newly hired temporary employees to employer-customers who had significant past-due accounts receivable and supervised catch-up payment plans for such employer-customers; and (11) the Shrocks' payroll, billing and accounting was processed by Dial.

The difficulty for the court is that the agreement establishing the business arrangement between Dial and the Shrocks is an oral agreement. The parties cannot agree as to what was said, and cannot even agree as to the parties to the agreement. The Shrocks contend that they contracted with Szambelan personally. Through Szambelan's affidavit, however, Dial contends that all of Szambelan's dealings with the Shrocks were in his capacity as president of Dial. Szambelan's testimony on the subject at the show cause hearing is not totally clear, but does support what he said in his affidavit. Szambelan states that the Shrocks agreed to be Dial's agents; agreed to be paid by way of commissions calculated as a percentage of the gross profit; and agreed that the office records would be treated as confidential trade secrets belonging to Dial. The Shrocks contend that they were sublicensees of Szambelan; that they owned an independent business; that

they paid the 50% split of the gross profit in return for the bookkeeping and payroll services of Dial; and that the business records belonged to the Shrocks and did not have to be kept confidential.

Either explanation is plausible, and there is evidence supporting the contentions of both parties as to the organization of the business. Thus, a genuine issue of material fact exists as to whether the Shrocks were agents of Dial. The effect of this factual issue on each claim will be discussed below.

### *The Claim of Dial for Replevin*

Dial seeks the right to have the use of the telephone number originally used by the Shrocks at their Wilsonville office and seeks to have the files and documentation pertaining to (1) the employer-customers serviced by Employers Overload through its Wilsonville office operated by the Shrocks; (2) the employees who worked in that office; and (3) the temporary service employees who worked for employer-customers managed through that office.

The Shrocks contend that a telephone number is not subject to replevin; that Dial does not have a right which is superior to the right of the Shrocks to that telephone number; and that the files and records created by the Shrocks in operating their business are not the property of Dial.

Dial contends that the telephone number and files belong to it because the Shrocks were only operating their business as agents of Dial.

■ "As a general rule, an action for replevin will lie for recovery of personal property to which the plaintiff has the right to immediate possession." *City of Portland v. Berry,* 86 Or.App. 376, 379, 739 P.2d 1041 (1987). Thus, to succeed, Dial must establish that it is the owner of the property sought or has some special right to possession of the property.

#### 1. *Telephone Number*

■ The Shrocks contend that an intangible, such as a telephone number, is not subject to replevin. The Shrocks also argue that

the telephone number in question belongs to them because it is the telephone number that was used by Betty Jean Shrock in the secretarial and transcription business which she conducted before the Shrocks began their temporary help service. The Shrocks further argue that they have always paid the charges associated with that telephone number, and Dial has never had any contractual duty to pay for the telephone services billed to that number.

The court is unaware of any Oregon cases holding that an intangible, such as a telephone number, can be the subject of a claim for replevin. The court, however, may order the Shrocks to change the intercept message or require the Shrocks to ask the telephone company to assign the number to Dial. A more serious problem, however, is that the Shrocks used the telephone number before ever contracting with Dial. There is no evidence that the Shrocks assigned whatever rights they have in the telephone number to Szambelan, Dial or Employers Overload. The court concludes that Dial has presented neither law nor facts in support of its claim to the telephone number. Accordingly, the defendants' motion for summary judgment is granted on the claim of Dial for replevin.

## 2. *Files and Business Records*

Dial argues that it is entitled to the files and business records from the Wilsonville office of Employers Overload operated by the Shrocks because the Shrocks created the records as agents of Dial. The Shrocks contend that the files and business records of Employers Overload in Wilsonville were created by them during the time that they operated their independent business, Employers Overload, and, thus, belong to them.

The court finds that there is an issue of fact as to whether Employers Overload was an independent business of the Shrocks operating under a sublicense or whether the Shrocks were acting as the agents of Dial. This issue must be resolved before the issue of ownership of the files and business records can be determined. Thus, the defendants' motion for summary judgment is denied as to the replevin claim of Dial for the files and

business records of the Wilsonville office of Employers Overload.

### The Claim of Dial Under the Uniform Trade Secrets Act

■ Dial contends that the Shrocks misappropriated its trade secrets by using the files of Dial's employer-customers and temporary employees while the Shrocks were fiduciaries and agents of Dial and had a duty to maintain the secrecy of those files and to limit the use of those files.

O.R.S. 646.461(4) defines a trade secret, including a customer list, as information that:

(a) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

There is evidence that the files were created through the efforts of the Shrocks; that the files contain non-public information, such as data on how pleased the employer-customers were with particular temporary employees assigned to them; and that the Shrocks and Szambelan agreed to keep the information confidential as a part of their oral agreement. The cases from other states cited by the Shrocks are not dispositive because these other states have not enacted the Uniform Trade Secrets Act thereby expressly including customer lists as possible trade secrets, as the State of Oregon has done. *See Scott v. Snelling and Snelling, Inc.,* 732 F.Supp. 1034 (N.D.Cal.1990). Further, the information on particular assignments is not ascertainable through any public source. As discussed above, the files could be the property of Dial if the Shrocks were acting as agents of Dial. Consequently, the defendants' motion for summary judgment is denied as to Dial's sixth claim for relief under the Uniform Trade Secrets Act.

### The Claim of Dial for Breach of Fiduciary Duty

■ Dial alleges that the Shrocks were acting as agents of Dial; that the Shrocks

had a fiduciary duty toward Dial; and that the actions of the Shrocks in using the confidential business records located in the Wilsonville office of Employers Overload to assist them in starting their own temporary help service was a breach of their fiduciary duty to Dial. An agent owes duties of care and loyalty to the principal. *Onita Pacific Corp. v. Trustees of Bronson,* 315 Or. 149, 161, 843 P.2d 890 (1992). As discussed above, there is a factual issue as to whether the Shrocks were agents of Dial and, thus, whether they had a fiduciary duty to Dial. The defendants' motion for summary judgment is denied as to the claim of Dial for breach of fiduciary duty.

### The Claim of Dial for Breach of Contract

Dial alleges in its third amended complaint that the Shrocks breached their oral contract with Dial by misappropriating Dial's confidential trade secrets for use in their new business, Quest Temporary Services. Because of the issue of fact as to the terms of the oral contract, the defendants' motion for summary judgment is denied on the claim of Dial for breach of contract.

### The Claim of Dial for Tortious Breach of the Duties of Good Faith and Fair Dealing

Dial contends that the Shrocks not only breached their oral contract with Dial, but breached the implied duty of good faith and fair dealing in that contract by misappropriating Dial's confidential trade secrets for use in their new business, Quest Temporary Services. The Shrocks contend that the contract between the parties created an "at-will" relationship, which was terminable at the will of either party.

 The duty of good faith and fair dealing is implied in the performance of every contract to facilitate the enforcement of the contract and to realize the reasonable contractual expectations of the parties. *Sheets v. Knight,* 308 Or. 220, 233, 779 P.2d 1000 (1989).

 Dial contends that the Shrocks' performance of the oral contract, and the term of the oral contract relating to confidential trade secrets, breaches the implied duty of the Shrocks to act in good faith and to deal fairly. The conduct at issue occurred during the performance of the oral agreement and before the Shrocks terminated the contract. The merit of this claim depends on the content of the oral contract. Because of that factual issue, the defendants' motion for summary judgment is denied as to Dial's claim for breach of the duties of good faith and fair dealing.

### The Claims of Dial for Tortious Interference with Contract and Tortious Interference with Business Relations and Prospective Advantage

 Dial alleges that the Shrocks tortiously interfered with the contracts between Dial and its employer-customers and its temporary employees. In order to prove a claim for the tortious interference with a contract, a plaintiff must prove that:

1) the plaintiff had a contract or a reasonable expectancy of economic advantage; 2) the defendant knew of the contract or expectancy; 3) the defendant intentionally interfered with the contract or expectancy; 4) the defendant's means or motive were improper or wrongful by some measure beyond the fact of the interference itself; and 5) the plaintiff was damaged as a result.

*Leaco Enters. v. General Elec. Co.,* 737 F.Supp. 605, 609 (D.Or.1990), (citing *Straube v. Larson,* 287 Or. 357, 361, 600 P.2d 371 (1979); *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.,* 283 Or. 201, 209–10, 582 P.2d 1365 (1978)). The similar tort of tortious interference with prospective business advantage does not depend on the existence of a contract, but arises when a defendant induces a third person not to enter into or not to continue a business relationship with the plaintiff. *Thompson v. Telephone and Data Sys.,* 130 Or.App. 302, 313 n. 1, 881 P.2d 819, *modified on other grounds,* 132 Or.App. 103, 888 P.2d 16 (1994).

 The Shrocks argue that the employer-customers and the temporary employees formed contractual relationships with the Shrocks themselves and not with Dial. The Shrocks have submitted deposition testimony

from employer-customers, in which these employer-customers state that they contracted with the Shrocks as the owners of Employers Overload. There is no evidence, however, that the employer-customers had full knowledge of the business arrangement created by the Shrocks' oral agreement with Peter Szambelan and Dial, of Dial's assumed business name of Employers Overload of Portland, or of Szambelan's assignment of rights in the name Employers Overload to Dial. Thus, although the employer-customers did business face-to-face with the Shrocks, they did not have knowledge of the relationship between the Shrocks and Dial. The factual issue on the agency agreement is fatal to the Shrocks' contention. Furthermore, the fact that the contracts were terminable at will is insufficient to dismiss these claims. Parties to contracts terminable at will also have an interest in the "integrity and security of their contract." *Leaco,* 737 F.Supp. at 609; *Lewis v. Oregon Beauty Supply Co.,* 302 Or. 616, 620, 733 P.2d 430 (1987).

The Shrocks also argue that they had neither an improper motive nor the improper means to solicit employer-customers and temporary employees to their new business. Means are made improper by reason of a statute, regulation, recognized rule of common law, or an established standard of a trade or profession. *Top Serv.,* 283 Or. at 209–10, 582 P.2d 1365. Improper means include, but are not limited to, "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." *Id.* at 210 n. 11, 582 P.2d 1365.

There is evidence that the Shrocks solicited employer-customers and temporary employees. The Shrocks mailed letters to the employer-customers announcing their new business within one hour of terminating their oral agreement with Dial in the meeting with Peter Szambelan. Letters to twenty-five employer-customers were written before the oral agreement was terminated and were apparently sent to those on the customer list discussed above. If the trier of fact finds that the Shrocks were agents of Dial, the use of the customer list could be an improper means.

The defendants' motion for summary judgment is denied as to the claims of Dial for tortious interference with contract and for tortious interference with prospective advantage.

## The Claim of Dial Under the Lanham Act

Dial claims that the Shrocks violated the Lanham Act by representing that they owned, as opposed to merely managed, Employers Overload in Wilsonville, Oregon, and that the intercept message heard by a caller to the Shrocks' prior telephone number misled those callers as to the source of the services to be provided by the Shrocks.

The Lanham Act prohibits wrongfully creating confusion as to the source of goods and services. 15 U.S.C. § 1125(a)(1) of the Lanham Act states, in pertinent part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

> · · · · ·

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The Act prohibits not only literal falsehoods, but also false representations made by implication or innuendo. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv.,* 911 F.2d 242, 245 (9th Cir. 1990).

The Shrocks contend that they made no false or misleading representation of fact that caused confusion as to the source of the Shrocks' services because they provided the services; they paid for the right to provide

those services, and they were licensed to use the name "Employers Overload." The Shrocks further contend that no one could be confused by a telephone intercept message that stated: "Thank you for calling. You have reached 682–1278. We are now Quest Temporary Services in Wilsonville, and our new number is 682–9292. For the Employer's [sic] Overload office near Washington Square, the number is 624–8000." Affidavit of Geoffrey Hunnicutt, p. 2.

Neither the factual record nor the legal arguments submitted to the court are sufficient to determine whether there is a likelihood of confusion and, thus, whether the Shrocks violated the Lanham Act. Therefore, the defendants' motion for summary judgment is denied as to Dial's seventh claim for relief under the Lanham Act.

### The Claim of Dial for Unfair Competition

 Dial's ninth claim for relief is a claim for unfair competition. The test of unfair competition is whether it is probable that an ordinary buyer in the ordinary course of business will be deceived into believing that the product of one party is actually that of another. *Columbia Eng'g Works v. Mallory,* 75 Or. 542, 547, 147 P. 542 (1915). The law of unfair competition does not impose a duty on a competitor to ensure that all customers are aware that an affiliation with a predecessor has ended, but merely a duty not to promote the perpetuation of the perception that they are still affiliated. *Shakey's Inc. v. Covalt,* 704 F.2d 426, 432 (9th Cir.1983).

 The allegation of unfair competition by Dial again refers to the telephone intercept message. As stated above, the record is insufficient to determine as a matter of law that it is probable that the employer-customers were deceived into believing that they were continuing to work with Employers Overload once the Shrocks began their new business. The defendants' motion for summary judgment is denied as to Dial's ninth claim for unfair competition.

### The Claim of Dial for a Permanent Injunction

In Dial's third amended complaint, there is a tenth claim for a permanent injunction. An injunction is a form of relief. Because the court is denying the motion of the defendants for summary judgment as to all claims, except a part of the claim for replevin, the request of Dial for a permanent injunction remains before the court and will be decided at the time of trial.

## CONCLUSION

The defendants' motion for summary judgment (# 16) is granted as to claim one concerning replevin of the telephone number and denied against all other claims.

## OPINION AND ORDER ON RECONSIDERATION

The matter before the court is the defendants' motion for reconsideration with regard to the balance of defendants' motion for summary judgment (# 94).

## BACKGROUND

This action arose when the defendants (collectively referred to as the Shrocks), managers of a temporary help service business, terminated their contractual agreement with the plaintiff, Dial Temporary Help Service, Inc. (Dial), and opened a new temporary help service business. The Shrocks contend that the original temporary help service business that they managed was an independent business operated by them pursuant to a license granted to them by Dial. Dial contends that the business managed by the Shrocks was a branch office of Dial; it was owned by Dial; and it was operated by the Shrocks on a commission basis.

On October 7, 1996, this court denied the Shrocks' motion for summary judgment against all claims except the claim of Dial to a telephone number. The ruling of the court was based on its conclusion that there was a genuine issue of material fact as to whether the Shrocks were the agents of Dial. The parties have both submitted testimony by way of affidavit and documents created during their business dealings with each other. The underlying agreement creating the business arrangement, however, was oral, and its

content is in dispute. The Shrocks move for reconsideration of that ruling.

## ANALYSIS AND RULING

The Shrocks contend that the court misunderstood one piece of evidence and overlooked a series of admissions made by Dial.

In its earlier opinion, the court stated:

> The employer-customers of the Shrocks paid their bills to Dial. From this revenue, the wages for the office staff and temporary employees, plus all payroll taxes, and some miscellaneous expenses such as workers' compensation insurance were paid. The amount of money remaining in Dial's account after the payment of wages, payroll taxes, and miscellaneous expenses was called the gross profit. The gross profit was evenly split between the Shrocks and Dial....

Opinion of October 7, 1996, p. 3. The Shrocks point to the affidavit of Peter Szambelan, the president and the sole shareholder, along with his wife, of Dial, in which he states that the wages for permanent office staff were paid by the Shrocks. The Shrocks are concerned that the court found that Dial paid a portion of the Shrocks' overhead. The court, however, did not make this assumption. On page seven of the opinion, the court noted the contention that "[t]he Shrocks bore the costs for all of their employees." The finding in the opinion to which the Shrocks object was an explanation of how the gross profit was calculated before being divided between the parties. The explanation submitted by the Shrocks does not change the analysis of the court.

For their second argument, the Shrocks point to twelve documents drafted by Dial and filed with the motion for summary judgment in which the Shrocks are called "owner/managers" and "sublicensees." The Shrocks contend that these admissions are conclusive proof that the Shrocks owned an independent business and were not agents of Dial.

In its opinion, the court noted more than ten contentions provided by each party in support of their versions of the oral agreement. These contentions were supported by affidavit testimony and documents. Although the documents noted by the Shrocks support their position, Dial did more than merely dispute the Shrocks' evidence in a contemporaneous affidavit. For example, Dial provided evidence that it had absorbed audit deficits totaling $30,947.00 for the improper reporting by the Shrocks of workers' compensation classifications. In a summary judgment motion, the court is not allowed to weigh and judge the evidence. *See Reynolds v. County of San Diego*, 84 F.3d 1162, 1166 (9th Cir.1996) (credibility determinations, weighing of evidence, and drawing of legitimate inferences are left to the jury). After reconsidering its opinion and order, the court remains convinced that there is a genuine issue of material fact as to whether the Shrocks were agents of Dial.

IT IS HEREBY ORDERED that the Shrocks' motion for reconsideration with regard to the balance of their motion for summary judgment (# 94) is DENIED.